## JESSE FOGG & another *vs.* THE MIDDLESEX MUTUAL FIRE INSURANCE COMPANY.

*It seems* that this indorsement on a policy of insurance, "For value received, pay the within, in case of loss to F. and H.," made to a purchaser of the property insured, is rather an order or assignment of a right to the money in case of loss, than a regular transfer of the contract of insurance.

To render such an indorsement operative as a perfect assignment of the policy, the assignees must at least show that the company, when assenting thereto, knew that the property insured had been sold to the assignees, and that they had given a new deposit note, as required by the by-laws of the company, in case of an alienation and formal transfer of a policy.

Proof in such case, that at the time of the company's assent to the assignment, a new deposit note had been delivered to an agent of the company, who resided in a different town, and was authorized to receive applications and deliver policies, and transfers of policies, and who did deliver the policy in question, is not sufficient; and the assent to such assignment indorsed on the policy by the president of the company, does not impose on the company the burden of proving that such new deposit note was not then known to have been given.

In such a case, evidence that the president and secretary, when assenting to the assignment, did not know that the property had been sold to the assignees of the policy, or that they had given a new deposit note to the agent, is competent and relevant for the company.

The policy in suit being on a stock of goods in a certain store, another policy between the same parties, made at the same time on the building, or a copy thereof, if the original be lost, is admissible in evidence as explanatory of the whole transaction.

ASSUMPSIT upon a policy of insurance against fire, on a stock of goods in Cambridgeport, dated October 3, 1845, originally issued to Daniel Leland and James Luke, Jr., but finally assigned to the plaintiffs. The legal validity of the assignment to the plaintiffs was the main question in the case.

At the trial in this court before *Bigelow*, J. it appeared that in March, 1847, Daniel Leland, Jr., then being the owner of said goods, and assignee of the policy now in suit, by transfer from the original assured, sold said goods to the plaintiffs, and about a year afterwards, namely, April 1, 1848, wrote on said policy the following : " For value received, pay the within in case of loss, to Jesse Fogg and Samuel F. Hersey, [the plaintiffs.] " The defendants assented to this assignment in these words indorsed on the policy. " April 15, 1848. Received, recorded, and assented to. Attest. N. BROOKS, Secretary"

Said Daniel Leland, Jr., called by the plaintiffs, testified, that the building containing the stock was also sold by him to the plaintiffs, at the same time as the stock, and as part of the same transaction; that there was also a policy of insurance on the building from these defendants; that nothing was done with these policies after said sale until April, 1848, when he carried both policies to one Samuel Pond, now deceased, then the agent of the defendants, in Cambridgeport, and through whom both policies were originally effected, and the previous transfers made; that he, Leland, wrote the transfer to the plaintiffs on both policies at the same time and according to Pond's direction; that he left them with Pond to be sent to the defendants' office in Concord; that about this time a deposit note was signed by the plaintiffs, for $3,000 upon the policy now in suit, which he himself delivered to Mr. Pond, with said policy, and he had never seen either the note or policy since. And that at the same time he gave Pond another deposit note on the policy on the store building, also signed by the plaintiffs, which he then identified; the same having been produced by the defendants at the trial.

It further appeared by the testimony of said Leland, that Pond said to him, when he gave him the two deposit notes of the plaintiffs, that " both policies were good; " and he never heard any thing further about said policies, until June, 1848, about three months prior to the fire, when Fogg, one of the plaintiffs, showed him a notice from the defendants, that the policy on the stock was not binding, because the property had been transferred to the plaintiffs, and no deposit note had been given the company by the plaintiffs; that after this, he told Mr. Shattuck, president of the company, that said note must be lost; that it was given to Pond, and they must have it somewhere; but that Fogg would give a new note, if he could have an indemnity against the other; that Shattuck agreed to meet him in Boston on a certain day and arrange the matter, but failed to do so. This interview was denied by Mr. Shattuck.

It further appeared that said Pond was the agent of the defendants in Cambridgeport, for receiving applications for

insurance, and delivering to persons insured their policies, when received from the defendants' office in Concord; that he also received application for transfers of policies, and transmitted them to the company, and that he had similar powers and authority conferred on him with other agents under the charter and by-laws of the company.

There was also evidence tending to show that said Pond, in a book where he regularly kept a record of policies passing through his hands as agent, had marked against this policy the word "transferred." The form of transfer, prescribed by the rules of the company for their agents, was not that written on the policy in suit, but was in these words:

"Know all men by these presents, that I, A. B. within named, in consideration of a sale and conveyance (in fee or in mortgage, as the case may be) to C. D. of
dated the             day of             18   , and. of one dollar to me paid by the said C. D. the receipt whereof is hereby acknowledged, do hereby assign and transfer to said C. D. his executors, administrators and assigns, the within policy of insurance, and in case of loss, direct the amount within insured to be paid to said C. D. his heirs, executors, administrators or assigns."

It appeared, however, that the usual fee for a formal assignment was paid the agent Pond, for the aforesaid order on this policy.

The defendants then offered in evidence, a copy of the policy on the real estate, with the several indorsements thereon, it being admitted that the original was destroyed; and they produced a book, in which was kept a record of all policies issued by the defendants, with all the indorsements and transfers thereon, similar to the record of policies and transfers usually kept by insurance companies, and offered in evidence the recorded copy of said policy on the building. The plaintiffs objected to this evidence, but it was admitted by the judge.

Nathan Brooks, secretary, and Daniel Shattuck, president of the defendant company, testified that they had the general care and charge of the business concerns of the company, and signed and countersigned all policies, and that all transfers

and assignments of policies were assented to by said Brooks
in writing; that said Brooks had possession of all books and
papers of the company, including premium or deposit notes,
and that it was his duty to receive and keep them; that he
had never received any premium or deposit note from the
plaintiffs on the policy now in suit, and never knew or heard
that any had been given; that said Pond had never sent him
any such note, or informed him that any such note had been
given, and that such note had never been in the office of the
company; that if any such note had come to the office, as he
had charge of all the papers, he should have known it, and
should now be able to find it; that he did find and had pro-
duced the note which was given by the plaintiffs on transfer
of the policy on the building, and he thought both policies
were sent him at the same time, although they were assented
to at different times.    Said Shattuck also testified, that he
never knew of a deposit note being given on the policy now
in suit.

It further appeared by the evidence of said Brooks and
Shattuck, that they never knew or heard of the sale and trans-
fer of the stock in trade by Leland to the plaintiffs, till the
spring of 1849, whereupon they sent the plaintiffs a notice
that there was no premium note given by them, and that the
policy in suit was void, unless a new note was given.    The
plaintiffs objected to any evidence on the part of said Brooks
and Shattuck, whether they knew of the sale of the stock
by Leland to them at the time of the assent to the indorse-
ment on the policy in suit, and also as to the time when
they first knew of such sale; but the evidence was admitted
by the judge.

To prove the by-laws of the company, the defendants pro-
duced their records duly kept and verified by their secretary
and clerk.    The plaintiffs objected to their admission, but it
appearing that they were regularly kept, and that the meetings
were duly notified, they were admitted.*

---

* From these by-laws, and from the charter of the company, and a circular of
instructions from the defendants to their agents, it appeared that § 12 of the charter

Fogg & another *v.* Middlesex Mutual Fire Insurance Company.

Upon this evidence the plaintiffs contended, and asked the judge to rule that if the jury were satisfied that, at the time of the indorsement on the policy in suit by Leland to the plaintiffs, they did in fact execute and deliver to Pond, the agent, a deposit note, then the assent of said company to the said indorsement on the policy was a valid assignment of the policy, although said note was never received by said company, and was never known by them to be in the hands of said Pond; that the defendants were estopped to deny that a deposit note was given, or that the assignment was valid, and had waived their right to require such deposit note; and that under the circumstances proved, the assent of said company to said indorsement was *primâ facie* evidence that said company had received said note, and the burden was on the defendants to show that they had not received it.

But the judge declined so to instruct the jury, and did instruct them substantially as follows:

That the burden of proof was on the plaintiffs, to show a valid subsisting contract of insurance on the part of the de-

---

provided, " That when any house or other building shall be alienated by sale or otherwise, the policy shall thereupon be void, and be surrendered to the directors of said company to be cancelled ; and upon such surrender, the assured shall be entitled to receive his, her or their deposit notes upon payment of his, her or their proportion of all losses and expenses that have accrued prior to such surrender— Provided, however, that the grantee or alienee having the policy assigned to him, may have the same ratified and confirmed to him, her or them, for his, her or their own proper use and benefit, upon application to the directors, and with their consent, within thirty days next after such alienation, on giving próper security to the satisfaction of said directors, for such portion of the deposit or premium note as shall remain unpaid ; and by such ratification and confirmation, the party causing the same shall be entitled to all the rights and privileges, and subject to all the liabilities, to which the original insured was entitled and subjected under this act."

The by-laws declared that, " When a policy shall be assigned in consequence of the alienation, by sale or otherwise, of the property insured, (sales in mortgage excepted,) no such assignment shall be received or considered valid, unless a premium note of the assignee, bearing even date with said assignment, shall be first left with the secretary or an agent, and the same approved by the board of directors.

No transfer or assignment, made more than thirty days after alienation, can be received or accepted at the office."

29*

fendants with them; that under the charter and by-laws of the company, in order to constitute such a contract as between the parties to this suit upon the policy in question, it was necessary for the plaintiffs to show an assignment of the policy to the plaintiffs, assented to by the defendants; that as the language of the indorsement on the policy, under which the plaintiffs claimed, signed by Daniel Leland, Jr., was not in terms an assignment of the policy, but rather an order to pay to the plaintiffs the amount due in case of loss, it was incumbent on the plaintiffs to show that it was in fact an assignment, and so intended and understood by the defendants, and that this could be done by showing that the defendants had re ceived a deposit note, or knew that one had been given to their agent, Pond, when they assented to the indorsement; and that if, upon the evidence in the case, the jury were satisfied that such note was given to the defendants or to their agent, Pond, and said indorsement was assented to by the defendants, with a knowledge that such note had been given either to themselves or to Pond, it would operate as an assignment of the policy, and the plaintiffs would be entitled to recover; that said Pond, being an agent with restricted and limited powers, had no right or authority to make a binding contract of insurance on the part of the company, without their assent, or knowledge, or ratification; and that if said deposit note had never been made or given by said plaintiffs to said defendants or their agent, Pond, or if such note was made and given to Pond, but the defendants never knew or were informed of the existence of such note, or that it was in the hands of Pond, but assented to said indorsement on said policy in entire ignorance that any such note was given, then it would not, under the charter and by-laws, be a valid contract of insurance as between the plaintiffs and the defendants, and the plaintiffs could not recover upon the policy.

The jury having retired and remained in deliberation some hours, came into court and asked whether the plaintiffs would be entitled to recover if the jury were satisfied that a deposit note was given to said Pond by the plaintiffs, but that the defendants never received it or knew such note was given,

and assented to said indorsement upon the policy, in ignorance of the existence of any such note ? To which the judge replied, that if the jury found such to be the facts, the plaintiffs were not entitled to recover in this action. The verdict was for the defendants, and the propriety of the aforesaid rulings and instructions was reserved for the whole court.

*G. M. Browne*, for the plaintiffs.

1. Depositing the note with Pond, the agent, was sufficient. And whether the company knew or did not know that this note was in the hands of the agent when they assented to the indorsement, is immaterial. The note must be in the hands of some agent. The company acts only by agents. The note *was* given,—given to an agent of the company,—to the very agent who negotiated the insurance and transfers, and received pay for it. The note was given to an agent of the company. The company assented to the indorsement, and these two elements alone constitute a transfer binding on the defendants. Pond could not make known officially the existence of the note, unless there happened to be a meeting of the stockholders or of the board of directors at the time. His naming it to individual directors or individual stockholders, could make no difference.

Suppose there was no meeting of the company at the time, or suppose Pond, the agent, converted the note to his own use, or lost or destroyed it, how could that affect the plaintiffs. Are the plaintiffs answerable for the vigilance or fidelity of the defendants' agents ? The goods were assigned to the plaintiffs ; the policy was indorsed ; it was marked " transferred " in the company's books, in the hands of the agent,—the fee payable on assignment of a policy (there being no fee on an order to pay) was paid to and received by the defendants, through the same agent; the company assented to the indorsement, and the deposit note was placed in the same agent's hands at the time of the transfer. Does not this make out a case for the plaintiffs,—must they go further and prove that the defendants, in addition to these things, knew that the note was in the hands of the agent ? *Fuller* v. *Boston Mutual*

*Fire Insurance Co.* 4 Met. 206; *Melledge* v. *Boston Iron Co.* 5 Cush. 179.

2. The assent of the company to said indorsement was conclusive evidence, or at least it was *primâ facie* evidence, that the company had received said note, and the judge should so have instructed the jury as the plaintiff requested. Beaumont on Ins. 23, 25; *Newcastle Fire Insurance Co.* v. *Macmorran,* 3 Dow, 255.

3. The rulings as to the evidence were wrong. The policy on the real estate was irrelevant, as much so as a deed of the land would have been. The copy of the indorsement thereon was improperly admitted, because the genuineness of the original was not proved; it was not proved that any original indorsement *such* as that copy, ever existed. The evidence as to whether Brooks and Shattuck knew of the sale of the goods, or when they knew, should have been rejected as irrelevant. The question on the judge's own theory is, whether the defendant corporation knew.

*A. H. Nelson & J. P. Converse,* for the defendants.

SHAW, C. J. Fire insurance has become so important in the business of the community, that it is much to be regretted that the practical management of the business is not conducted with more care and skill in its details, so as better to secure the rights of the parties, as they are intended to be established by the contract, when rightly made, and rightly understood.

This action is brought by the assignees of a policy of insurance against fire, for $3,000, on a stock of goods in a store at Cambridgeport, originally made to Daniel Leland and James Luke, Jr. By the original act of incorporation, March, 1826, this company were authorized to make insurance on real estate only; but by an additional act, in March, 1828, they were empowered to insure all kinds of personal property, in the same way and manner they were empowered to insure the kinds of property in said act mentioned. This act, we suppose, extends to all the provisions of the charter, by-laws, and regulations of the company, made in regard to insurance on

buildings and real estate, so far as applicable to insurance on personal property.

The plaintiffs sue as assignees, and if they can recover at all, it must be in that capacity, and upon that title.

As a policy of insurance is not a negotiable instrument, it cannot be legally transferred so as to enable the assignee to maintain a suit in his own name, without the consent of the other party. But in general, at the common law, where one party assigns all his right and interest in the contract, and the assignee gives notice to the other party to the contract, and he agrees to it, this constitutes a new contract between one of the original parties and the assignee of the other, the terms of which are regulated and fixed by those of the original contract. This rule applies to policies as well as other contracts, and it is often convenient and desirable to apply it; and there are two cases where this application frequently happens.

The first is, when the insured property is alienated or sold by the assured. After such sale, if nothing more is done,—no surrender or change of the policy,—and the goods should be burnt, nobody could recover on the policy ; not the original assured, for he has sustained no loss; the property was not his, and the loss of it was not his loss ; not the purchaser, because he has no contract with the company. And although in popular language, the goods are said to be insured against loss by fire, yet, in legal effect, the original assured obtains a guaranty by the contract that he shall sustain no damage by their destruction by fire. But in case of such sale or alienation of the insured property, the original assured having no longer any interest in the policy, except to claim a return of premium, if he will assign his policy, or his contract of insurance to such purchaser, and the company assent to it, here is a new and original contract, embracing all the elements of a contract of insurance between the assignee and the insurers. The property having become the purchaser's, is at his risk, and if burnt, it is his loss, and he has a good original contract, upon a valid consideration, to guarantee him against such loss. Accordingly, provision is made

in the charter and by-laws, and also by the terms of the policy, for an assignment of the contract; the company returns no part of the premium, but the assignee has the benefit of it, upon such terms as he and his assignor may determine; the assignment is indorsed on the policy, and presented to the president of the company, who ordinarily is authorized to give the assent of the company to the assignment; the old deposit note is surrendered, and a new deposit note given by the assignee.    In the regulations of this company in a circular of instruction to agents, a form is given for such transfer, notifying the sale of the property, naming the purchaser, and assigning to such purchaser, his executors, &c., the policy of insurance, and in case of loss, directing the amount to be paid to the said purchaser, his heirs, &c.    Upon each assignment perfected, there is an entire change in the contract, in the party contracted with, in the insurable interest in the property at risk, and it becomes an insurance on the property of the assignee, and ceases to be a contract of insurance of the property of the assignor.

But there is another species of assignment, or transfer it may be called, in the nature of an assignment of a chose in action ; it is this : " In case of loss, pay the amount to A. B." It is a contingent order or assignment of the money, should the event happen upon which money will become due on the contract.    If the insurer assents to it, and the event happens, such assignee may maintain an action in his own name, because, upon notice of the assignment, the insurer has agreed to pay the assignee instead of the assignor.    *Mowry* v. *Todd,* 12 Mass. 281.    But the original contract remains; the assignment and assent to it form a new and derivative contract out of the original.    But the contract remains as a contract of guaranty to the original assured ; he must have an insurable interest in the property, and the property must be his at the time of the loss.    The assignee has no insurable interest, *primâ facie,* in the property burnt, and does not recover as the party insured, but as the assignee of a party who has an insurable interest and a right to recover, which right

he has transferred to the assignee, with the consent of the insurers.

The plaintiffs, to recover in the present case, must prove themselves assignees of the contract, because they prove an alienation of the property, and a sale to themselves, long before the fire, so that all insurable interest in the original assured had ceased, and no loss was sustained by them by the fire, payable to anybody. The plaintiffs having acquired the property, so that it was at their risk, the question is, whether they have proved such an assignment of the contract as to bring themselves within the provisions of the charter and by-laws, as assignees, holding in all respects the rights of the original assured.

In order to prove their title as assignees, the plaintiffs offered the original policy, made in 1845, to Leland and Luke, Jr., the subsequent transfer of Daniel Leland, Jr., who had become the assignee of the policy, and the sole owner of the stock; and a sale in March, 1847, of the whole stock to the plaintiffs There are several indorsements on the policy, but none affecting the present case, until the one said to have been made and indorsed April 1, 1848, in the words following: " For value received, pay the within, in case of loss, to Fogg and Hearsey." By the twelfth section of the act of incorporation, the " grantee or alienee of the property insured, having the policy assigned," may have the same ratified, &c., to his own proper benefit, on application to the directors, and with their consent, within thirty days next after such alienation, on giving proper security, &c. Here, it is manifest, that no assignment to the plaintiffs of any kind was made till more than a year after the time of the sale of the stock. But if the directors had been notified of such sale and alienation of the stock insured, and had been informed that a full and complete transfer of the contract, and all interest in it, had been made, although at a time more than thirty days after the sale, and had then expressed their full assent to it, it might be a waiver of the mere point of time. Waiving that point, therefore, the question is, whether the indorsement in

question was an assignment of the policy, and was so understood and assented to by the company. It is in few and brief terms, and *primâ facie*, we should be inclined to think that it was not an assignment of the contract, but only of a right to the money in case of loss. But it was strongly urged by the plaintiffs that it was intended, by one party as a transfer and assignment of the entire policy, and was so understood by the other, and that the circumstances which preceded, attended, and followed it, would be sufficient to show that it was so intended and understood. When words are doubtful, it is competent for parties to go into proof of the relation in which the parties stood to each other, the acts mutually done by them, and generally, the surrounding circumstances, in order the better to understand the meaning of the language used by them, and thus ascertain their intent; and under this rule, the evidence was admitted. But we think the ruling was sufficiently favorable to the plaintiffs, in permitting them thus to go into evidence *aliunde*, to explain the terms of the transfer.

The plaintiffs, in order to satisfy the court and jury that their circumstances were such as usually attend a full assignment of the contract, were permitted to prove, if they could, 1. That there was an actual alienation of property by the assignee of the original assured to the plaintiffs; 2. That this fact was known to the president when he gave the assent of the directors to the transfer as it was actually made and presented to the company. 3. That the plaintiffs, as assignees, filed their own deposit note, in place of the deposit note originally given by the assured. 4. That this fact was known to the president and secretary of the company, when they gave the assent of the company in behalf of the directors. There was some evidence tending to show that a new deposit note was made by the assignees, and placed in the hands of Pond, now deceased, who had been the agent of the company for receiving proposals, through which this policy was originally made; but the evidence failed to show that he had any authority to receive deposit notes, on the assignment of a

policy, and the evidence was very strong that no such note was deposited with the then treasurer, or any resident agent of the company, by Pond or otherwise. We think, therefore, that the jury were rightly instructed that if such a note had been left with Pond, but he never transmitted it to the company, or notified the proper officers of the company of his having it, it could not be considered proof that the plaintiffs had complied with that requisition of the law, which requires a new deposit note before the assignment is complete.

Again; as to the knowledge of the president at the time he assented to the assignment as made, to pay to the assignees in case of loss. The extent of a simple assent to a statement or proposition, must depend on the terms of such proposition. If the most natural construction of the terms of this assignment was, that it was the assignment of a right to the assignees to recover the money in case of loss, which, but for such assignment, would be due to the original assured, then the conclusion would be, that they assented to that proposal. But if the plaintiffs would show that the assured had at the time sold their property to the assignees, and that the assignees had duly given a new deposit note, in order to draw the conclusion that the officers of the company knew and understood that this was an assignment of the contract, and assented to it with that understanding, the burden of proof was upon them to show that these officers had that knowledge. But Brooks and Shattuck both testified that they never knew or heard of the sale and transfer of the stock by Leland, Jr. to the plaintiffs, until the spring of 1849, which was long after their assent to the transfer; and when they heard of it, they gave notice to the plaintiffs that there was no deposit note given by them, and that the policy was void unless such note was given. These were the principal points to which the instructions of the court referred, and we think they were correct and were adapted to the state of the evidence.

Several exceptions were taken to the admission of evidence. It had been in evidence, that at the time when the policy in controversy was made on the stock, another policy, in favor of the same party, was made on the building in which the

stock was kept. The defendants offered to put in a copy of this policy, with the indorsements thereon, the original being lost; to this the plaintiffs objected, but it was admitted. This we think was correct; the copy was good secondary evidence; and we are of opinion that the original, made between the same parties, at the same time, one on the store and one on the stock, that if either had any bearing upon the other, it was competent evidence, and its weight was for the jury.

The plaintiffs' counsel objected to any evidence on the part of Brooks and Shattuck, as to whether they knew of the sale of the stock by Leland, Jr. to Fogg and Hearsey, at the time of their assent to the indorsement on the policy in suit, and as to when they first knew of such transfer and sale, but it was admitted. We are of opinion that the plaintiffs cannot object to the admission of this evidence; it tended to rebut the case on which the plaintiffs relied, which was, that these officers had such knowledge, in order to give effect to their acts in giving such assent.

The court are of opinion that the instructions asked for by the plaintiffs would not have been correct in matter of law; that the instructions given were correct; and the questions of fact having been left to the jury, under instructions sufficiently favorable to the plaintiffs, and the jury having found a verdict for the defendants, they are entitled to judgment upon it.

*Judgment on the verdict for the defendants.*