## MORRIS v. THOMAS.

CONTRACT.—*Lease of Minerals.*—*Construction of.*—*Pleading.*—*Argumentative Denial.*—A. and B., partners owning a coal-mine which they had leased to C., reserving to themselves as rent a certain royalty for each bushel of coal mined by the latter, entered into an agreement, in writing, whereby A. "turned over" to B. "his one-half of coal mined" under said lease "for the consideration of" a certain sum per bushel, "bank measure," as "royalty," payable in instalments.

*Held,* in an action by A. against B., to recover an amount alleged to be due as royalty, that the terms of such contract are clear and unambiguous.

*Held,* also, that an answer which merely alleges that a certain amount, less than that alleged in the complaint, was due to the plaintiff, and offering to allow judgment to be taken therefor, is insufficient on demurrer, and does not amount to an argumentative denial.

*Held,* also, that, where the terms of a contract are plain and unambiguous, conduct of the parties in carrying out its provisions, apparently not conforming thereto, can not, in an action upon it, be so pleaded as to give to it a construction different from that warranted by its own terms.

From the Vanderburgh Circuit Court.

*J. M. Shackelford* and *R. D. Richardson*, for appellant.

*C. Denby* and *D. B. Kumler*, for appellee.

HOWK, J.—The appellee, as plaintiff, sued the appellant, as defendant, in the court below.

In his complaint, the appellee alleged, in substance, that on the 1st day of January, 1874, he and the appellant were the owners of a certain coal-mine, situated on Green river, in the State of Kentucky; that, before that time, the appellee and appellant had, by their firm name of Thomas & Co., leased said mine to the firm of T. Shiver & Bros. for the term of three years, commencing July 5th, 1873, in consideration, among other things, that said T. Shiver & Bros. agreed to pay to said Thomas & Co. one-fourth of one cent for each and every bushel of coal that said Shiver & Bros. should mine in said coal-mine, a copy of which lease was filed with said complaint, by the terms of which lease said firm of Thomas & Co. had the refusal of all the coal that said Shiver & Bros. might mine in said mine; that on January 1st, 1874, in consideration, among other things, that appellee would and did turn over to the appellant his one-half of the coal that should be mined by said T. Shiver & Bros. at said mine, under said lease, the appellant, by his written agreement, a copy of which was filed with said complaint, promised the appellee that he would pay to appellee the sum of one-quarter of one cent for each and every bushel of coal that should be taken out of said mine; and the appellee said, that said agreement was subject to a condition, that Cassius C. Thomas & Bro. should not discontinue the sale of coal to river steamers, and, in fact, said Cassius C. Thomas & Bro. had not discontinued such sale, but then continued to sell the same to river steamers; and the appellee averred, that from and after April 1st, 1874, and until January 1st, 1875, there had been mined by said T. Shiver & Bros., in said mine, six hundred and fifty-seven thousand eight hundred and thirty-eight

bushels of coal, on which the appellee was entitled to receive from the appellant, under said contract, in monthly payments, the sum of eight hundred and twenty-two dollars and thirty cents, being one-fourth of one cent per bushel on the half of said coal so mined, which sum the appellant, though often requested, has failed and refused to pay, as the same became due, and the same remained due and unpaid.   Wherefore, etc.

To appellee's complaint, the appellant answered in a single paragraph, in which he alleged, in substance, that the appellee ought not to have or maintain his said action against the appellant, because, he said, that, from the date of said lease, to wit, July 5th, 1873, by the appellee and appellant, under their firm name of Thomas & Co., up to January 1st, 1874, the said firm of Thomas & Co. carried on the coal trade in the city of Evansville, Indiana; and, during the whole of said time, the said firm of Thomas & Co. took from said Shiver & Bros., of the coal mined by them at said mine, such quantities only as Thomas & Co. deemed necessary and proper for the carrying on of their said business in Evansville; and further, that, during the whole of said time, said Shiver & Bros. mined thousands of bushels of coal at said mine, in excess of that taken and required by said Thomas & Co. in their said business, which excess the said Shiver & Bros. sold and disposed of to other parties than said Thomas & Co., they paying to Thomas & Co. royalty on all the coal so mined by them at said mine, in accordance with the terms of said lease; that on January 1st, 1874, the *appellant*, by purchase, became the successor of Thomas & Co. in said business, and he was to carry on the business in the same manner that the firm of Thomas & Co. had done, the appellee simply turning over to the appellant his, the appellee's, one-half of the coal mined at said mine, and the appellee, by the terms of said contract, reserving and accepting his portion of the royalty that was to be paid by said Shiver & Bros.; that from and after January 1st, 1874, when the

appellant became the successor of Thomas & Co., up to April 1st, 1874, he continued said business in the same manner that it had been carried on by said Thomas & Co., that is to say, he took, of the coal mined at said mine by said Shiver & Bros., such quantities only as the trade and business required; that the appellant paid, and appellee received from appellant, one-quarter of one cent per bushel on the one-half of the coal so taken and used by appellant in the said business, during January, February and March, 1874; and that, during said months, said Shiver & Bros. mined at said mine large quantities of coal, to wit, two hundred thousand bushels, in excess of that taken and used by appellant in said business, which excess Shiver & Bros. sold and disposed of to other parties than the appellant, which fact was well known to the appellee, and the appellee collected from said Shiver & Bros. his, the appellee's, portion of the royalty on the excess of coal mined at said mines, during said months, by said Shiver & Bros., just as the firm of Thomas & Co. had done prior to the time of the appellant's succeeding said firm in said business; that the excess of coal, to wit, two hundred and ten thousand four hundred and forty-six bushels, mined at said mine by said Shiver & Bros. between April 1st, 1874, and the time of the beginning of this suit, and not taken or used by appellant in his said trade and business, was, by said Shiver & Bros., sold and disposed of to other parties than the appellant, with the full knowledge, approbation and consent of both appellee and appellant, and with appellee's express authority to said Shiver & Bros. to so mine, sell and dispose of such excess of coal, by them mined at said mine, and not required or taken by appellant, to the parties and persons to whom the same was sold and delivered; that the appellee collected from said Shiver & Bros. his portion of the royalty on all the coal mined at said mine, just as he had done during the time that Thomas & Co. had carried on said trade and business, and as he had also

done for three months after appellant succeeded to said business; that from January 1st, 1874, up to the time of the bringing of this suit, the said Shiver & Bros. mined only six hundred thousand four hundred and sixty-two bushels of coal, three hundred and ninety thousand and sixteen bushels of which the appellant had required, taken and used in his said business, on one-half of which there is due the appellee one-fourth of one cent per bushel, on, to wit, one hundred and ninety-five thousand and eight bushels, amounting in all to the sum of four hundred and eighty-seven dollars and two cents, which sum the appellant had ever been ready and willing to pay, and had, time and again, offered to pay; that is to say, at the end of each month he tendered to the appellee the full amount of money due him for coal taken and used by appellant in his said business, but the appellee refused to accept or receive the same; and the appellant, in and by his answer, offered and consented that judgment might be entered against him for the sum of four hundred and ninety dollars. Wherefore the appellant prayed, that his rights be protected, and for other proper relief.

To the appellant's answer the appellee demurred for the want of sufficient facts therein to constitute a defence to his action, which demurrer was sustained by the court below, and to this decision the appellant excepted. And the appellant refusing to answer further, by consent the cause was submitted for trial to the court below, without a jury, for the assessment of damages; and, upon the evidence, the court assessed the appellee's damages in the sum of eight hundred and sixteen dollars and seventy-five cents, and rendered judgment accordingly.

The only alleged error of the court below, assigned by the appellant in this court, is the sustaining of the appellee's demurrer to the appellant's answer.

It is difficult to determine, from the averments of the appellant's answer, what was the precise defence which

the appellant intended to interpose to appellee's action. From the points made in argument by the appellant's learned attorneys in this court, we incline to the opinion that they also have been somewhat embarrassed with the same difficulty.

The first point thus made is, "that the answer is a good argumentative denial." An argumentative denial is seldom "good," in pleading, for any purpose; and we think we may fairly assume, that, when the answer was filed, it was not intended by appellant's counsel to be a denial, argumentative or otherwise, to appellee's complaint. The argumentative denial on which counsel rely is not a denial of appellee's cause of action, for that was the written agreement between the parties, which was made a part of the answer as well as of the complaint. The appellee had alleged in his complaint, as a fact, that Shiver & Bros. had mined six hundred and fifty-seven thousand eight hundred and thirty-eight bushels of coal; and this fact, it is claimed, the appellant had argumentatively denied, by simply alleging, in his answer, that Shiver & Bros. had only mined six hundred thousand four hundred and sixty-two bushels of coal. The appellant's argumentative denial hath this extent and no more,—the discrepancy between his statement and that of the appellee, as to the number of bushels of coal mined by Shiver & Bros.

It will readily be seen that the only effect of this argumentative denial, if such it may be termed, is merely to diminish the amount of appellee's recovery, and not to defeat his cause of action.

In our opinion, the appellant's first point is not well taken.

The second position assumed by appellant's attorneys, in argument, is thus stated in their own language:

" That the answer sets up the only proper and just construction of the agreement entered into between the par-

ties,—that placed upon the instrument by the parties themselves."

In the agreement referred to, the appellee was "the party of the first part," and the appellant was "the party of the second part."

The clause of this agreement, of which the appellant undertook, in his answer, to give "the only proper and just construction," was in these words:

"It is further agreed between the aforesaid parties, as they own a coal-mine at or near Spottsville, (Ky., on Green river,) Ky., that the party of the first part turns over to the party of the second part, his one-half of coal mined at the aforesaid, for the consideration of one quarter of one cent per bushel, for lump coal and nut coal, royalty, bank measure, to be paid monthly by the party of the second part of this agreement to the party of the first part."

There is no room, it seems to us, in the phraseology or verbiage of this clause, for construction or interpretation. It is plain, certain, and free from ambiguity. It contains not a word or expression of doubtful or indefinite meaning. There is but one technical word in the entire clause, and the meaning of that word is fixed and made certain by means of its context. If there was any obscurity, uncertainty or ambiguity in the terms of this contract, then the acts of the parties in connection therewith, as suggested by appellant's counsel, would furnish valuable aid in the construction of the contract. But where, as in this case, the terms of the contract are plain, intelligible and free from doubt and uncertainty, rules of construction are unnecessary and of no possible service. In such a case, it is certainly not the province of the courts, by any rules of construction, to make another and entirely different contract for the parties from the one they made for themselves.

We think, therefore, that appellant's second point is not well taken, and that his rule of construction, and his

authorities in support of it, are not applicable to the case now before us.

In our opinion, no error was committed by the court below, in sustaining the appellee's demurrer to the appellant's answer.

The judgment of the court below is affirmed, at the appellant's costs.