DIAMOND PLATE GLASS COMPANY ET AL. *v.* TENNELL.

[No. 2,599. Filed Dec. 13, 1898. Rehearing denied March 29, 1899.]

BOUNDARIES.—*Description.*—*Deeds.*—A description of real estate in a lease: "One tract of land, each twenty (20) feet square of the following real estate in Union township, Howard county, Indiana, to wit: All that part W. ½ N. E. ¼ sec. 24, town 23 north, range 5 east, which lies south and west of Wildcat creek, containing in all thirty-two acres, one of said twenty (20) foot tracts being eight rods south and fifteen east of northwest corner of the above described land" is insufficient, admitting that the word "rods" should be supplied after the word "fifteen", as it is manifest that every part of the square tract cannot be eight rods south and fifteen rods east of the northwest corner of the whole tract, and the description fails to state what part of it is so situated. *pp. 133, 134.*

SAME.—*Description.*—*Deeds.*—In the description of real estate in a written instrument the land must be so far described that it may be identified without resort to parol evidence. *p. 133.*

SAME.—*Description.*—*Deeds.*—In the description of real estate: "All that part W. ½ N. E. 4 section 24, town 23 north, range 5 east," etc., the figure "4" after "N. E." means "quarter", and should be so read. *p. 135.*

CONTRACTS.—*Construction.*—Where the language of a contract is indefinite or ambiguous, it is the duty of the court to adopt the construction and practical interpretation which the parties themselves place upon same; but the effect of a contract will not be controlled by an erroneous construction given it by the parties, where its meaning is clear. *pp. 136-139.*

From the Tipton Circuit Court. *Reversed.*

*Stuart Bros. & Hammond* and *Blacklidge & Shirley*, for appellants.

*Moon & Wolf*, for appellee.

ROBINSON, J.—This cause was transferred to this court by the Supreme Court. Appellants' appeal from a judgment recovered against them for rents alleged to be due appellee on a gas lease. The errors assigned call in question the sufficiency of the complaint, striking out the cross-complaint of appellant, Diamond Plate Glass Company, and overruling the motion for a new trial. The questions argued call for a

construction of the lease, and will be considered under the motion for a new trial.

It is argued that the lease introduced in evidence does not contain a sufficient description of the real estate attempted to be leased. The description set out in the lease filed with the complaint is as follows: "One tract of land, each twenty (20) feet square of the following real estate in Union township, Howard county, Indiana, to wit: All that part W. ½ N. E. ¼ sec. 24, town 23 north, range five east, which lies south and west of Wildcat creek, containing in all thirty-two acres, one of said twenty (20) foot tracts being eight rods south and fifteen east of northwest corner of the above described land." Counsel for appellant say, in their brief: "If the lease covered the whole thirty-two acres, there would be no difficulty in the description, but, as it covers only '20 feet square' the description of the same should be sufficiently definite to enable a competent surveyor to find it." In describing the location of this tract twenty feet square, it is evident that a word has been omitted after the word "fifteen." But admitting, without deciding, that the word "rods" should be supplied after the word "fifteen," there is yet a defect in the description which is fatal.

It does not appear from the record that appellants ever took possession of the leased premises. Appellee testified that no gas well had ever been drilled upon the land attempted to be described in the lease, that he had been in possession of the land since the lease was executed, and that neither of the appellants had ever been in possession of any part of it. In the description of real estate in a written instrument the land must be so far described that it may be identified without resort to parol evidence. In such cases, if an officer is unable to locate the land without the exercise of an arbitrary discretion, the description is insufficient. *College Corner, etc., Co.* v. *Moss*, 92 Ind. 119; *Miller* v. *Campbell*, 52 Ind. 125. Because the particular tract is in the form of a square, it does not necessarily follow that two

of its boundary lines run north and south, and that two of them run east and west. There is no more authority for saying that the northwest corner of the square tract lies eight rods south and fifteen rods east of the northwest corner of the whole tract than there is for saying that the northeast corner of the square tract is so situated. It is manifest that every part of the square tract cannot be eight rods south and fifteen rods east of the northwest corner of the whole tract; and, as the description fails to state what part of it is so situated, an officer undertaking to locate the square tract must arbitrarily determine what point is so located, and then must arbitrarily determine whether the boundary lines shall run with the points of the compass or otherwise. *Swatts* v. *Bowen*, 141 Ind. 322; *Howell* v. *Zerbee*, 26 Ind. 214. The case of *Indianapolis, etc., Gas Co.* v. *Spaugh*, 17 Ind. App. 683, is not controlling in the case at bar. In that case there was a provision in the lease, and as a part of the description of the particular tract, that its boundaries should be designated and fixed by the lessor, and the complaint showed that the lessor was ready and willing and offered to locate all boundary lines, but that the company refused to allow the same to be done. See, also, *Lingeman* v. *Shirk*, 15 Ind. App. 432, and *Stahl* v. *Van Vleck*, 53 Ohio St. 136, 41 N. E. 35. The fact that there was a stipulation in the lease that the parties might, by mutual agreement, change the location of the well, can have no bearing one way or another under the pleadings. The complaint seeks to recover rent for a location attempted to be fixed in the lease itself. Counsel for appellee cite the case of *Collins* v. *Dresslar*, 133 Ind. 290. In that case the description was as follows: "A part of the west half of the northwest quarter of section fifteen (15), township thirteen (13) north, range three (3) east, described as follows, to wit: 'twenty-nine (29) acres off the south end of sixty (60) acres off the north end of the west half of the northwest quarter of said section fifteen (15).' " This description was held sufficient, the court saying, "Where the

contrary is not expressed, it will be presumed that lines are
to be run straight, and parallel with other lines." But in
that case two sides of the particular tract sought to be de-
scribed were fixed. It required the running of only one line
to fix the boundary of the sixty acres, and the running of an
additional line to fix the boundary of the twenty-nine acres.
The east and west boundaries were already located.

In the lease introduced in evidence the description of the
real estate reads: "All that part W. ½ N. E. 4 section 24
township 23 north, range 5 east," etc. It is claimed by coun-
sel for appellant that this description is bad. The figure "4"
after "N. E." evidently means "quarter," and should be read
so. The word "quarter" would be supplied if the description
read "W ½ N. E. section 24," etc. *Etchison Ditching As-
sociation* v. *Jarrell*, 33 Ind. 131.

It is argued that nothing was due on the lease when suit
was brought, or at most only the $8 acre rental. It ap-
pears from the evidence that the lessee never took pos-
session of the premises, and that no well was ever drilled.
The lease was made May 16, 1889. The description of the
ground leased has been set out above. It was provided that
the lessee should have the right of ingress and egress to and
from each twenty-foot square tract over the entire tract for
the purpose of operating the gas wells, laying mains, etc. The
lessees agreed to deliver to the first party during the contin-
uance of the lease, natural gas, free of charge, necessary for
domestic use for dwelling house now on the premises, said
gas to be delivered in a main or pipe line on a public high-
way nearest to the principal dwelling, the gas to be fur-
nished on or before the 1st day of November, 1889, unless
prevented by unavoidable accident or delay. That the lease
should be deemed to commence and run from the date of the
signing, and should be deemed to have terminated whenever
natural gas ceases to be used generally for manufacturing
purposes in Howard county, Indiana, or whenever the lessees
should fail to pay or tender the rental price agreed upon

within sixty days from the date of its becoming due. That, "as an additional consideration the said second party agrees to pay said first party an annual rental of $100 each year for each gas well drilled as aforesaid which produces gas in paying quantities sufficient for manufacturing purposes, said payments to commence and become due and·payable on the 1st day of January, 1892, as to each of said gas wells after the completion thereof, and to continue thereafter annually during the continuance of this lease. Until the drilling of a gas well on said premises by said second party, they shall pay to said first party an annual rental of $8, to be paid on the 1st day of January of each year. Should any other gas well or wells be put down on said thirty-two acre tract of land other than herein stipulated for, then said second party, their heirs and assigns, shall thereafter be relieved and released from the payment of the rental as in this contract provided."

It is true, it is alleged in the complaint that it was orally agreed between the parties at the time that the lessee should pay the lessor an annual rental upon the land of $8, payable till 1892, and $100 to be paid on the 1st day of January, 1892, and of each year thereafter, and that other oral agreement was by both the parties to the lease intended to be expressed in the written agreement. But there is no evidence in the record to sustain this allegation. The lessor Tennell testified that at the time the lease was made the terms thereof were agreed upon, and were then reduced to writing, and there is no evidence of any oral agreement having been made. We find no provision in the lease by which the lessees bound themselves to drill any well on the leased premises.

We are unable to see how this lease can be construed so that any well rental should be due and payable until after a well should have been drilled. The lease provides that the payments of the $100 each year for each gas well drilled should commence and become due and payable on the 1st day of January, 1892, as to each of the gas wells *after the completion thereof*, and continue *thereafter* annually during

the continuance of the lease.   Were this provision standing alone, we could but hold that the well rental should become payable only upon the drilling of a well.   Any other construction necessitates the ignoring of certain words used in the lease.   Whether, in the event a well had been drilled after 1892, the rent should be payable from January 1, 1892, is a question we do not and need not decide, because no well ever was drilled.   But any doubt that might exist as to the meaning of the above provision is cleared away by the provisions of the lease immediately following, which say: "Until the drilling of a gas well on said premises by said second party, they shall pay to said first party an annual rental of $8, to be paid on the 1st day of January of each year."   As we have seen, the lessees did not bind themselves to drill any well.   They did agree to pay an annual rental for the twenty-foot square tract until a well was dug, and, in that event the acre rental was to cease, and the well rental take its place.   It cannot be said that such a construction makes the contract an inequitable one as to appellee. The lease gave appellants the right to the possession of the twenty-foot square tract only, with the right of ingress and egress and pipe-laying as to the balance of the thirty-two acres.   Appellee had a perfect right to sink wells upon any part of the thirty-two acre tract except the particular twenty feet square.   That this right was recognized and considered at the time is evident from that part of the lease which states that, should any other gas well or wells be put down on the thirty-two acre tract of land other than stipulated for in the lease, then the lessees should thereafter be relieved and released from the payment of the rental as provided in the contract.

It is argued by counsel for appellee that the parties themselves had placed a construction upon the lease, and had acted upon that construction, and, having construed it, such construction is now binding.   It appears from the evidence that the acre rental of $8 was paid up to January 1, 1892,

and beginning with that year the lessees had paid a well rental of $100 each year for the years 1892, 1893, 1894, and 1895, in full to January 1, 1896. This evidence is shown by the testimony of appellee, and also by the entries on a page of register of leases kept by appellant, the Diamond Plate Glass Company.

It appears from the evidence that this record was made up from the lease, and was entered by a clerk of appellant, and, when payments were made, they were made without consulting the lease, but were made from this entry in the register. There is no evidence that these payments were made pursuant to any oral agreement made at the time of or subsequent to the execution of the lease. From all the evidence we can but conclude that these payments were made upon the construction given the lease as written, and not from any oral agreement as to how payments should be made. The construction to be given the lease is purely a question of law for the court. As we read the lease, there is no ambiguity in it. Its meaning is plain. It has been given a construction contrary to its express terms. The annual well rental has been paid under a mistake of law.

The doctrine has been declared a number of times in this State that when the language of a contract is indefinite or ambiguous, it is the duty of the court to adopt the construction and practical interpretation which the parties themselves have placed upon the contract, and to enforce that construction. *Fidelity, etc., Co.* v. *Teter,* 136 Ind. 672; *Olds Wagon Works* v. *Coombs,* 124 Ind. 62; *City of Vincennes* v. *Citizens Gas Co.,* 132 Ind. 114, 16 L. R. A. 485; *Vinton* v. *Baldwin,* 95 Ind. 433; *Bates* v. *Dehaven,* 10 Ind. 319. But the effect of a contract will not be controlled by an erroneous construction given it by the parties themselves, where its meaning is clear. *Ketcham* v. *Brazil Block Coal Co.,* 88 Ind. 515; *Morris* v. *Thomas,* 57 Ind. 316; *Railroad Co.* v. *Trimble,* 10 Wall. 367; *Fogg* v. *Middlesex, etc., Ins. Co.,* 10 Cush. 337; *Citizens' Fire Ins. Co.* v. *Doll,* 35 Md. 89; *Garard* v.

*Monongahela College,* 114 Pa. St. 337, 6 Atl. 701.  In *Morris* v. *Thomas, supra,* the court said: "If there was any obscurity, uncertainty, or ambiguity in the terms of this contract, then the acts of the parties in connection therewith, as suggested by appellants' counsel, would furnish valuable aid in the construction of the contract.  But where, as in this case, the terms of the contract are plain, intelligible, and free from doubt and uncertainty, rules of construction are unnecessary and of no possible service.  In such a case it is certainly not the province of the courts, by any rules of construction, to make another and entirely different contract for the parties from the one they made for themselves."  In *Garard* v. *Monongahela College, supra,* where a party to a contract had for three years paid interest, which, on a proper construction of the contract and by the letter of the instrument itself, he did not owe, it was held that such payment could have no weight on the question of the construction of the contract.

This action was brought to collect rent alleged to be due on the lease for gas wells.  As we construe the lease, nothing was due for such rent when the action was brought.  The motion for a new trial should have been sustained.  Judgment reversed.