## GARDNER v. CAYLOR ET AL.

[No. 2,937. Filed Jan. 30, 1900. Rehearing denied April 19, 1900.]

CONTRACTS.—*Construction by Parties.*—If the meaning of a contract is clear, its effect will not be controlled by an erroneous construction given it by the parties themselves. *p. 526.*

SALES.—*Contract.*—*Novation.*—The assignment of a contract of sale by one of the parties thereto, which assignment was consented to and the assignees accepted as parties to the contract by the other party, amounts to a valid novation. *p. 526.*

SAME.— *Contract.* — *Breach.* — *Damages.* — Where a purchaser contracted to take a certain amount of ice each month at a stipulated price, and bound the seller not to sell to any other person, the seller cannot recover damages for the buyer's refusal to take the specified amount, when he neither tendered it nor attempted to dispose of it at the market price. *pp. 522-527.*

APPEAL AND ERROR.—*Failure to Assess Nominal Damages.*—A failure to assess nominal damages does not affect the substantial rights of the parties, and is not reversible error.  *p. 528.*

From the Marion Circuit Court.  *Affirmed.*

*R. W. McBride* and *C. S. Denny,* for appellant.
*Daniel Wait Howe,* for appellees.

ROBINSON, J.—Appellant and appellee Caylor agreed in writing February 22, 1896, that appellant would furnish Caylor 500 tons of ice between April 1st and May 1, 1896, at $1.50 per ton; 600 tons per month for May, June, July, August, and September, 1896, at $2.00 per ton; 500 tons between October 1st and November 1, 1896, at $1.50 per ton,—all ice to be taken from platform at ice-plant connected with appellant's abattoir, and paid for monthly on or before the 15th day.  February 25, 1896, Caylor assigned the contract to his co-appellees, the City Ice Company, the Artificial Ice and Cold Storage Company, the Polar Ice Company, the W. S. Budd Ice Company, and the Holt Ice and Cold Storage Company, which assignment was accepted by appellant, who agreed to accept Caylor's assignees, in lieu of Caylor, as parties to the contract. April 4, 1896, appellant agreed with Caylor to sell him 100 tons of ice in addition to the 500 tons sold, to be delivered during April, at $1.50 per ton, and in consideration of Caylor's acceptance of this proposition appellant agreed not to sell or deliver ice to any one else in Indianapolis during the existence of both contracts, without Caylor's consent.  This contract was assigned and accepted as the former contract.  All ice was delivered to Caylor's assignees, and the bills paid by them.  During April appellant delivered 431 tons and 1,900 pounds, and on May 16th they paid appellant the contract price of 600 tons, to wit, $900; but they did not then definitely know the capacity of appellant's ice-machine, nor did they know but that appellant manufactured in that month the full amount of 600 tons. No such representation was made to them, and the payment

was made without inquiry on that subject. Appellant's ice-machine had a capacity of seventeen to twenty-one tons per day, when in full operation and perfect order. During July and August its average capacity was seventeen and one-half tons, the other months averaging about twenty tons per day. Appellant's ice-house, wherein all ice manufactured by him was stored till delivered, had a capacity of eighty tons. During May appellant delivered 586 tons and 400 pounds, which was all that was demanded, and on June 18th was paid therefor $1,172.40; being $2 per ton for the amount actually called for and delivered,—the bill rendered by appellant being for that amount. During June appellant delivered 548 tons 800 pounds. At one time more ice was demanded than appellant had, and at another time the ice-machine was stopped for a day or two because the ice-house was full of ice which had not been called for. July 1st appellant rendered a statement, and demanded $1,164, being at the rate of $2 per ton for 582 tons, the same being the 600 tons, less eighteen tons used by appellant; and appellant was then informed that only ice actually delivered would be paid for. For June appellant receipted for $1,096.80 and thereafter bills were presented for ice delivered, only. During July appellant delivered 515 tons 200 pounds, and on August 22nd was paid $1,029.40. During July ice was called for on several occasions when appellant did not have as much as demanded, and appellant furnished during that month only the amount so delivered. During August 528 tons and 700 pounds were furnished for which on September 18th was paid $1,056.70. During that month appellant did not furnish as much as was demanded, and did not have for delivery more than was delivered. During September 398 tons 1,100 pounds were delivered, which was all that was called for, and for which, on October 9th, $797.10 was paid. During this month eighty tons were manufactured and ready, in excess of what was called for, and appellant's machine had the capacity to

make the full 600 tons, if it had been called for. During October ninety-one tons were furnished, which was all that was called for, and was all that was manufactured during that month for delivery, and for which, on November 7th, $136.50 was paid. During this month appellant could have manufactured the full amount contracted for, if it had been called for. During the time covered by the contracts the market price for ice was never less than the price named in the contracts. Appellant did not sell ice to any other person during the term of the contract, but used ice in his own business; yet appellant's machine had the capacity to furnish all the ice for the contract, if used to its full capacity, for all the months except June, July, and August. During the whole time appellant did not have ready for delivery more than eighty tons in excess of what was actually delivered. Other than as may appear above, nothing was said or done by the parties to modify the contract, or to authorize appellant to sell ice not called for, or to authorize appellant not to manufacture the full amount of ice contracted for. The market value of ice during these months was as follows, per ton: April, $2; May, $2; June, $2.50; July, $3.50; August, $4; September 1st to 15th, $3.50; September 16th to 30th, $3; October, $2. No money was paid appellant except as above stated. On three occasions appellant notified the parties that his ice-house was full, and requested them to remove it. The parties never refused to take ice when notified that it was ready, and from April 1st to October 1st never failed to call for ice more than two days in succession; and all ice made for them and not taken each month was taken the next month, except ice made in October. No ice was taken after October 3rd, until October 15th; nor was any taken after October 17th until October 24th, which was the last taken. Appellant made no ice after October 19th, and on October 25th there was ready for delivery not to exceed eighty tons. During the time of the contract, appellant used for his own pur-

Gardner v. Caylor.

poses the following: June, eighteen tons; July, thirteen and one-half tons; August, eleven and one-fourth tons; September, fourteen and one-fourth tons; October, six tons. No ice was manufactured by appellant from April 1st to October 31st that was not taken, except such as appellant himself used and such as was left over October 25th. Upon these facts, a conclusion of law was stated in appellee's favor.

It is true the court finds that for the month of April, Caylor's assignees received only 431 tons, but paid the full contract price of 600 tons; but it is also found that they did not then definitely know the capacity of appellant's ice-machine, nor did they know but that he had manufactured the full 600 tons. During May the amount actually called for, delivered, and paid for was 586 tons 400 pounds. During June the amount delivered was 548 tons 800 pounds, and on July 1st a bill was presented demanding payment for 600 tons less eighteen tons appellant had used himself; and appellant was then notified that appellees would pay only for ice actually delivered, and the June bill was paid on that basis, and thereafter appellant rendered bills only for ice actually delivered. It is true that the full contract amount for April was paid for, and a construction was then put upon the contract by the parties; but an explanation for that is given, and it appears that the parties impliedly placed a different construction upon it for May, and expressly did so for June. Even if the contract had been uncertain and ambiguous, the parties gave it two different constructions, and apparently followed the construction last given.

When the language of a contract is indefinite or ambiguous a court should adopt the construction and practical interpretation which the parties themselves have placed upon it, and enforce that construction. *Fidelity, etc., Co.* v. *Teter*, 136 Ind. 672; *Olds Wagon Works* v. *Coombs*, 124 Ind. 62; *City of Vincennes* v. *Citizens, etc., Co.*, 132 Ind. 114, 16 L. R. A. 485; *Vinton* v. *Baldwin*, 95 Ind. 433; *Bates* v. *Dehaven*, 10 Ind. 319.

But if the meaning of a contract is clear, its effect will not be controlled by an erroneous construction given it by the parties themselves. *Ketcham* v. *Brazil Block Coal Co.*, 88 Ind. 515; *Morris* v. *Thomas*, 57 Ind. 316; *Railroad Co.* v. *Trimble*, 10 Wall. 367; *Fogg* v. *Middlesex Ins. Co.*, 64 Mass. 337; *Citizens Ins. Co.* v. *Doll*, 35 Md. 89; *Garard* v. *Monongahela College*, 114 Pa. St. 337, 6 Atl. 701.

In *Morris* v. *Thomas*, *supra*, it was said: "If there was any obscurity, uncertainty, or ambiguity in the terms of this contract, then the acts of the parties in connection therewith, as suggested by appellant's counsel, would furnish valuable aid in the construction of the contract. But where, as in this case, the terms of the contract are plain, intelligible and free from doubt and uncertainty, rules of construction are unnecessary and of no possible service. In such a case it is certainly not the province of the courts, by any rules of construction, to make another and entirely different contract for the parties from the one they made for themselves." *Diamond Plate Glass Co.* v. *Tennell*, 22 Ind. App. 132.

The finding shows that the contracts between appellant and Caylor were assigned to Caylor's co-appellees and that appellant consented and agreed thereto, and accepted them in lieu of Caylor as parties to the contract. According to the rule declared in *Hoffa* v. *Hoffman*, 33 Ind. 172, this shows a valid novation. See also *Millard* v. *Porter*, 18 Ind. 503; *Hill* v. *Warner*, 20 Ind. App. 309.

The contract was one of sale, by which appellant agreed to sell, and appellees to take, so much ice per month. The suit is not for ice delivered, but for damages from appellee's failure to take ice as agreed; and the question is not appellant's willingness to deliver it, but his readiness to do so. It had a market value, which the findings show was at no time less than the contract price, and, before appellant can recover the contract price, he must have either delivered the property to appellant, or have done such acts

as would have vested title in appellees if they had consented to accept it. *Pittsburgh, etc., R. Co.* v. *Heck*, 50 Ind. 303, 19 Am. Rep. 713; *Fell* v. *Muller*, 78 Ind. 507; *Lassen* v. *Mitchell*, 41 Ill. 101; *Wyman* v. *Winslow*, 11 Me. 398, 26 Am. Dec. 542; *Shawhan* v. *Van Nest*, 25 Ohio St. 490, 18 Am. Rep. 313; *Smith* v. *Wheeler*, 7 Ore. 49, 33 Am. Rep. 698; *Hayden* v. *Demets*, 53 N. Y. 426; *Dwiggins* v. *Clark*, 94 Ind. 49, 48 Am. Rep. 140.

The general rule is if a contract to deliver goods is broken, the measure of damages is the difference between the contract price and the market price of the goods at the time and place the contract is broken. *Rahm* v. *Deig*, 121 Ind. 283; *Dwiggins* v. *Clark*, 94 Ind. 49, 48 Am. Rep. 140. And if a contract to accept and pay for goods is broken by the vendee's refusal to accept them, the measure of damages is governed by the same rule. *Fell* v. *Muller*, 78 Ind. 507; *Beard* v. *Sloan*, 38 Ind. 128; *Ganson* v. *Madigan*, 13 Wis. 75; *Thompson* v. *Alger*, 12 Metc. 428; *Allen* v. *Jarvis*, 20 Conn. 38; Chitty Contr., (11 Am. ed.) p. 1331; *Gordon* v. *Norris*, 49 N. H. 376; *Northrup* v. *Cook*, 39 Mo. 208; *Neal* v. *Shewalter*, 5 Ind. App. 147; *Ridgeley* v. *Mooney*, 16 Ind. App. 362; *Browning* v. *Simons*, 17 Ind. App. 45; *Dill* v. *Mumford*, 19 Ind. App. 609.

It is true, the contract provides that appellant should sell ice to no person other than appellees during the time specified. But this bound appellant only so long as appellees complied with the contract, and received the ice delivered or tendered; for, if he delivered it, or offered to deliver it, and they refused to receive it, appellees could certainly not be heard to object if he sold it to other parties. It is well settled that it is the duty of a party subjected to injury from a breach of a contract to make reasonable exertion to render the injury as light as possible. If, through his own negligence or wilfulness, his damages are enhanced, and such damages could have been avoided through reasonable exertion, the increased loss is his own.

Construing the findings as a whole we can but conclude that they show appellant sustained no substantial damage. There was perhaps a breach of the contract which would have authorized nominal damages, but a court's failure to assess such damages will not be reviewed on appeal. A failure to assess nominal damages does not affect the substantial rights of the parties, and is not reversible error. *Patton* v. *Hamilton*, 12 Ind. 256; *Hacker* v. *Blake*, 17 Ind. 97; *Black* v. *Coan*, 48 Ind. 385; *Mahoney* v. *Robbins*, 49 Ind. 146; *Wimberg* v. *Schwegeman*, 97 Ind. 528; *Kalen* v. *Terre Haute, etc., R. Co.*, 18 Ind. App. 202; *Tracy* v. *Hackett*, 19 Ind. App. 133; *Stewart* v. *Strong*, 20 Ind. App. 44.

Judgment affirmed.