## Cal Hirsch & Sons Iron and Rail Company *v.* Peru Steel Casting Company.

[No. 7,371.   Filed December 15, 1911.   Rehearing denied April 4, 1912.]

1. Appeal.—*Waiver of Error.*—An assignment of error is waived by failure to make any argument or to cite any authority in support thereof.   p. 61.
2. Appeal.—*Motion for New Trial.—Briefs.—Waiver of Error.*— An assignment of error in overruling a motion for a new trial is waived, unless the motion or its substance is set out in appellant's brief.   p. 62.
3. Contracts.—*Requisites.—Offer and Acceptance.*—A contract is created by an offer and acceptance, and the acceptance must be unconditional and in the terms of the offer.   p. 67.
4. Sales.—*Contract by Correspondence.—Intention of Parties.— Construction of Letter.*—Where plaintiff offered to sell defendant five hundred tons of melting scrap steel at a certain price per ton

delivered, and in its letter in reply thereto defendant stated that it had decided to give "an order for sample car subject to our approval of the five hundred tons mentioned some time ago," and that the order "is given on condition that you can make immediate shipment of the sample car, for if the scrap does not prove satisfactory we will want to have time to investigate sources of supply elsewhere," the fact that the order was expressly limited to a sample car would indicate that there was no intention at that time to order more, and the letter cannot be construed as an agreement to accept and pay for five hundred tons if the sample car proved satisfactory. pp. 67, 68.

5. EVIDENCE.—*Writing.—Intention of Parties.*—If the words of a writing clearly express the intention of the writer, such intention will prevail and extraneous evidence cannot be admitted to show a contrary intention. pp. 68, 70.

6. APPEAL.—*Insufficiency of Evidence.—Statute.*—Under §698 Burns 1908, Acts 1903 p. 338, a direct assignment of error questioning the sufficiency of the evidence to sustain the verdict is unavailing, that section being applicable only to cases not triable by jury. p. 71.

7. APPEAL.—*Insufficiency of Evidence.—How Question Presented.*—In cases triable by jury the question as to the sufficiency of the evidence can be presented on appeal only by assigning as one of the causes for a new trial that the verdict or decision is not sustained by sufficient evidence, and then assigning as error the action of the trial court in overruling the motion for a new trial. p. 71.

From Miami Circuit Court; *Joseph N. Tillett,* Judge.

Action by Cal Hirsch & Sons Iron and Rail Company against the Peru Steel Casting Company. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*A. L. Hirsch, Antrim & McClintic,* for appellant.
*Charles A. Cole* and *Albert H. Cole,* for appellee.

LAIRY, J.—Appellant, as plaintiff, sued appellee in the Miami Circuit Court to recover damages for the breach of an alleged contract for the sale of 500 tons of melting scrap steel, at the agreed price of $20.50 per ton. The complaint was in six paragraphs. The first paragraph counted on an executed sale in writing by plaintiff to defendant of 500 tons of melting scrap steel, at the price of $20.50 per gross

ton, alleging that a portion of the same had been accepted and paid for at the agreed price, and that defendant refused to accept the remainder. The second paragraph is identical with the first, except that it counted on an executory contract of sale, instead of an executed one. The third paragraph counted on a parol contract for a sale of the same material, and, for the purpose of taking the contract out of the operation of the statute of frauds, alleged facts to show a partial delivery and acceptance by defendant. The fourth paragraph is identical with the third, except that it counted on an executory, instead of an executed parol contract. The fifth and sixth paragraphs were based on an account for $11 for freight paid by appellant, but as there was no evidence introduced in support of either of these paragraphs, they will not be further considered.

Appelleee demurred separately to each paragraph of the amended complaint. The demurrer was sustained as to the first and second, and overruled as to the remaining paragraphs. Issues were formed on this complaint, and the case submitted to a jury, which returned a verdict in favor of appellee. Appellant filed a motion for a new trial which was overruled, and the court rendered judgment in favor of appellee and against appellant for costs. Appellant assigns the following errors: (1) The court erred in sustaining the demurrer of appellee to the first paragraph of appellant's amended complaint filed February 5, 1909; (2) the court erred in sustaining the demurrer of appellee to the second paragraph of appellant's amended complaint filed February 5, 1909; (3) the court erred in overruling appellant's motion for a new trial; (4) the judgment appealed from is not fairly supported by the evidence; (5) the judgment appealed from is clearly against the weight of the evidence.

1. Appellant has waived the first error assigned, by failing to make any argument or to cite any authority in support thereof. *Hamilton* v. *Hanneman* (1898),

20 Ind. App. 16, 50 N. E. 43; *Delaware, etc., Tel. Co.* v. *Fiske* (1907), 40 Ind. App. 348, 81 N. E. 1110.

Appellant has waived the third error assigned, by a failure to set out in its brief a copy of the motion for a new trial, or to set out the substance of said motion. It is impossible for any judge of this court, not in possession of the record, to know from an examination of appellant's brief, what causes were assigned in its motion for a new trial. This court cannot consider a specification of error, unless the brief of appellant contains a concise statement of so much of the record as fully presents the error relied on. Rule 22, Clause 5, of Supreme and Appellate Courts; *Springer* v. *Bricker* (1905), 165 Ind. 532, 76 N. E. 114; *Kilmer* v. *Moneyweight Scale Co.* (1905), 36 Ind. App. 568, 76 N. E. 271. In order to raise any question presented by the motion for a new trial, it is necessary for the appellant to set out said motion in his brief, or to state its substance.

By the second assignment of error, the action of the trial court, in sustaining the demurrer of appellee to the second paragraph of appellant's amended complaint, is presented for review. This paragraph of complaint, after alleging that both plaintiff and defendant are corporations, is as follows: "Plaintiff further says that during the month of July, 1903, and for some time prior thereto, it was engaged in buying, handling and selling scrap melting steel, and said defendant during said time was engaged in the manufacture of steel castings; that with a view of procuring a purchaser for its goods and merchandise said plaintiff on the 2d day of July, 1903, opened a correspondence with said defendant, which correspondence consisting of letters and telegraph messages, continued for some time, and as a result of said correspondence together with the interpretation put upon said correspondence by the plaintiff and defendant which interpretation as shown by letters and telegrams of both plaintiff and defendant, copies of which are herein set out,

and by their actions, plaintiff avers that on, to wit, the 17th day of August, 1903, said plaintiff by the agreement in writing, which written agreement consists of the letters and telegraph messages of which copies are hereafter set out in this paragraph of its complaint, promised and agreed that it would sell and deliver to said plaintiff pursuant to its instruction five hundred tons of twenty-two hundred and forty (2,240) pounds per ton of heavy melting scrap steel, for which said defendant in said written agreement promised and agreed to pay to plaintiff, the sum of $20.50 per gross ton of twenty-two hundred and forty pounds per ton f. o. b. cars Peru, Indiana. Copies of which letters and telegraph messages comprising and constituting said written contract are as follows, to wit:''

"Peru Steel Casting Co., Peru, Indiana.    7/2/03
    Dear Sirs:—Are you in the market for 500 tons of heavy melting steel? Please let us hear from you and oblige. .    .    Yours truly,
        Cal Hirsch & Sons Iron and Rail Co.''

"Cal Hirsch & Sons Iron and Rail Co.    7/7/03
    Gentlemen:—Please state at your earliest convenience what scrap you have to offer suitable for our purpose and the price—also what delivery you want to make us, stating definitely just what time we can positively depend upon.    Yours truly,
        Peru Steel Casting Co.''

"Peru Steel Casting Co.    7/9/03
        Peru, Indiana.
    Offer five hundred tons scrap melting steel twenty-five gross delivered can make delivery suitable to you. When do you want it? Answer.
        Cal Hirsch & Sons Iron and Rail Co.''

"Peru Steel Casting Co.    ·    7/9/03
        Peru, Indiana.
    Gentlemen:—Yours of the 7th received. We can no doubt deliver 500 tons of heavy melting steel and can make delivery satisfactory. Kindly state delivery wanted. We can sell this material at $20.50 gross ton delivered.

We await to hear from you by wire as we have accordingly wired today of which enclosed please find copy.
Yours truly,
Cal Hirsch & Sons I & R Co."

"Peru, Ind. July 9, 1903

Cal Hirsch & Sons, Iron & Rail Co.
St. Louis, Mo.

Gentlemen:—We note your message 9th. inst, regarding scrap, but as we are more particularly interested in the kind of scrap you have to offer there is no necessity in wiring in regard to this matter as we are only investigating the scrap matter and locating available quantities.                        Yours truly,
Peru Steel Casting Co."

"Peru Steel Casting Co.                        7/11/03
Peru, Indiana.

Dear Sirs:—Yours of the 9th received and noted. In regard to melting steel in question—we could give you first class heavy melting steel and am satisfied the material will come up to your understanding. We would ask you to wire us because we are continually in correspondence with the different consumers of this material and are likely to dispose of what we have on hand at any day.                        Yours truly, .
Cal Hirsch & Sons Iron and Rail Co."

"Peru, Ind. July 15, 1903

Cal Hirsch & Sons Iron and Rail Co.
St. Louis, Mo.

Gentlemen:—

We note yours 11th inst. regarding scrap, but you do not state what class of scrap it is. It is essential that we know what we are buying and accordingly would thank you to state just such quality as you can fully guarantee.                        Yours truly
Peru Steel Casting Co."

"Peru Steel Casting Co.                        7/14/03
Peru, Ind.

Dear Sirs:—Yours of the 13th received and noted. In reference to class of material we can furnish you, it consists of rails, springs, knuckles, drawbars and other railroad melting steel. We will make the specifications to answer your purpose; in fact we can conform to specifications you require as we have previously shipped

you and we know about what you want.  Kindly wire us whether we should enter your order or not, and oblige.                Yours truly,
Cal Hirsch & Sons Iron and Rail Co.''

"Peru, Ind. July 15 1903
Cal Hirsch & Sons Iron and Steel Co.
St. Louis, Mo.

Gentlemen:—We note yours 14th inst regarding scrap.  We will not want any draw bars unless the sand has been completely removed from them and none of the other railroad stock unless it is convenient for our charging boxes.  At what price will you furnish us a single car of this material so we can determine definitely what it is?
Yours truly,<br>Peru Steel Casting Co.''

"Peru Steel Casting Co.                    7/16/03
Peru, Ind.

Dear Sirs:—Referring to conversation over phone to-day with your Mr. Eastman, we would thank you to let us know whether you want us to ship you the car load of steel as sample or do you wish us to enter your order for 500 tons?
Yours truly,<br>Cal Hirsch & Sons Iron and Rail Co.''

"Peru, Ind. July 22, 1903.
Cal Hirsch & Sons Iron and Rail Co.
St Louis, Mo.

Gentlemen:—In further reference to scrap, beg to state that we have decided to give you an order for sample car subject to our approval of the 500 tons mentioned some time ago.  We hope this car will prove satisfactory, and would caution about getting anything in that we cannot handle in our charging boxes.

The order is given on condition that you can make immediate shipment of the sample car, for if the scrap does not prove satisfactory we will want to have time to investigate sources of supply elsewhere.
Yours truly;<br>Peru Steel Casting Co.''

The complaint at this place sets out a number of other letters, which passed between the parties, all of which were

66 APPELLATE COURT OF INDIANA,

Cal Hirsch & Sons, etc., Co. *v.* Peru Steel, etc., Co.—50 Ind. App. 59.

written subsequent to July 22, 1903, and which relate to the shipment of scrap steel. The complaint then proceeds as follows:

"Plaintiff further says that, pursuant to defendant's instructions, it shipped to defendant in car, to wit, No. 60,163, over the Wabash Railroad, the sample car of scrap referred to in said letters of date July 22, 1903, which was received by defendant on, to wit, the 7th day of August, 1903, and was inspected and accepted by it, as a sample car of the five hundred gross tons to be delivered to it by plaintiff as herein set forth, and afterwards, to wit, on August 17th, 1903, said defendant accepted the offer of plaintiff to sell it five hundred gross tons of heavy melting steel scrap at $20.50 per gross ton of 2,240 pounds per ton, f. o. b. cars Peru, Indiana, as aforesaid, and wrote plaintiff by its said letter of that date, ordering of plaintiff the shipment of another carload of the material so contracted for defendant under said written agreement, which was delivered by plaintiff to and accepted by said defendant; and afterwards, to wit, on September 28, 1903, pursuant to the order and instruction of said defendant, plaintiff delivered to defendant another, the third carload of the material so contracted for by defendant under said written agreement, which was received and accepted by said defendant; that three carloads of material so delivered to and accepted by said defendant, aggregated sixty-four tons, nine hundred and sixty pounds, all of which received, accepted and paid for by said defendant, under, pursuant to and in compliance with the terms of said written agreement, and no part of said material was ordered, delivered or paid for under or pursuant to any contract other than the written agreement above set out."

The complaint further avers, in substance, that appellant complied in all things with the terms of the agreement, but that appellee, after accepting three carloads of the material, wrongfully violated the terms of its agreement and refused to accept the remainder of said 500 tons, or any part thereof;

NOVEMBER TERM, 1911. 67

Cal Hirsch & Sons, etc., Co. v. Peru Steel, etc., Co.—50 Ind. App. 59.

that appellant has at all times been ready, willing and able to comply with the terms of said contract, and deliver the remainder of said scrap steel in accordance with the terms of said agreement, but appellee refuses to accept the same; that the real value of said material f. o. b. cars at Peru did not exceed $12.50 per ton, and that plaintiff was damaged in the sum of $4,350.

The demurrer to this complaint presents a single question: Do the letters and telegrams set out in the complaint considered together constitute a written contract, by the terms of which appellant agreed to sell to appellee 500 tons of scrap steel at the price of $20.50 per gross ton, and by the terms of which appellee agreed to purchase that amount of material at the price stated? There is no doubt that appellant proposed by letter to sell to appellee 500 tons of scrap steel for the price mentioned, but appellee contends that the complaint does not set out any letter or other written communication, by the terms of which appellee accepted this offer. A contract is created by an offer and acceptance, and the acceptance must be unconditional and in the terms of the offer. *Havens* v. *American Fire Ins. Co.* (1894), 11 Ind. App. 315, 39 N. E. 40; *Schmitt* v. *Weil* (1910), 46 Ind. App. 264, 92 N. E. 178; *Corcoran* v. *White* (1886), 117 Ill. 118, 7 N. E. 525, 57 Am. Rep. 858; *Wilkin Mfg. Co.* v. *H. M. Loud & Sons Lumber Co.* (1892), 94 Mich. 158, 53 N. W. 1045; *Baker* v. *Holt* (1882), 56 Wis. 100, 14 N. W. 8.

By the telegram and letter of July 9, appellant offered to sell appellee 500 tons of melting scrap steel at the price of $20.50 per gross ton, delivered at Peru, Indiana. It is claimed that this offer was accepted by appellee by its letter of July 22, on condition that the carload ordered by that letter as a sample proved satisfactory. The body of this letter is as follows: "In further reference to scrap, beg to state that we have decided to give you an order for sample car subject to our approval of the 500 tons men-

68      APPELLATE COURT OF INDIANA,

Cal Hirsch & Sons, etc., Co. v. Peru Steel, etc., Co.—50 Ind. App. 59.

tioned some time ago. We hope this car will prove satisfactory, and would caution about getting anything in that we cannot handle in our charging boxes. The order is given on condition that you can make immediate shipment of the sample car, for if the scrap does not prove satisfactory we will want to have time to investigate sources of supply elsewhere.'' Appellee claims that this letter cannot be so construed as to amount to an acceptance of the offer previously made, and that it amounts only to an order for a carload sample of the 500 tons previously mentioned.

If this letter constitutes an acceptance of appellant's offer in the terms in which it was made, the contract was thereby concluded, and the complaint will be held to state a cause of action, but if this letter did not amount to an acceptance of such offer, there was no contract, and the complaint is insufficient.

It is the duty of this court, as it was of the court below, to construe this letter. If it is clear and unambiguous in its meaning, it becomes the duty of the court to declare such meaning, and determine the question here involved accordingly. If the clear and unequivocal meaning of the letter conveys an intention to accept the proposition of appellant according to its terms, the complaint is sufficient; but if the language of the letter clearly indicates that the writer did not intend to accept the proposition of appellant, then there is no room for construction, and the complaint must be held insufficient. If the words of a writing clearly express the intention of the writer such intention will prevail, and extraneous evidence cannot be admitted to show a contrary intention. *Morris* v. *Thomas* (1877), 57 Ind. 316; *Groot* v. *Story* (1872), 44 Vt. 200; *Smith* v. *Faulkner* (1858), 78 Mass. 251.

We think that it is clear from the language of the letter of July 22, that appellee did not intend by such letter to accept the proposal of appellant previously made, either absolutely or conditionally, on the sample car's

proving satisfactory. In the first part of the letter appellee states that he has decided to order a sample car of the 500 tons of scrap mentioned some time previously. The fact that the order was expressly limited to a sample car would indicate that there was no intention at that time to order more. Following this part of the letter just referred to, appellee expresses the hope that the car ordered may prove satisfactory, and cautions appellant not to get anything in that cannot be handled in its charging boxes. The letter then concludes: "The order is given on condition that you make immediate shipment of the sample car, for, if the scrap does not prove satisfactory, we will want to have time to investigate sources of supply elsewhere." We think that the word "order," as used in that part of the letter just quoted, clearly refers to the order for the sample car, as no other order was given by the letter under consideration. The reason given in the letter for desiring an immediate shipment of the sample car cannot be held to indicate that appellee accepted the previous proposition of appellant, and agreed to accept and pay for 500 tons if the sample car proved satisfactory. The only legitimate meaning which can be drawn from this language is, that if the sample car proved satisfactory appellee would not be compelled to look elsewhere for sources of supply.

Appellant insists that the letter of appellee under consideration is not entirely free from doubt as to its meaning, and that, for the purpose of resolving any doubt as to such question, we should look to the entire correspondence. From a consideration of the language employed in the letter we have no doubt as to its meaning, but, in obedience to the suggestion of counsel, we have examined all the correspondence preceding and leading up to the letter of July 22, and a consideration of this correspondence tends to confirm us in the opinion first expressed.

All the letters of appellant prior to July 22 indicate a desire on its part to obtain an order from appellee for 500

tons of steel scrap. In its letter and telegram of July 9, it makes the offer to sell, fixes a price, and requests appellee to answer by telegraph. In subsequent letters, especially the one of July 14, appellant urges appellee to place the order. In all the letters of appellee, written prior to July 15, it studiously declines to discuss either price of material or quantity, all its letters being limited to inquiries concerning the quality and kind of material appellant had, and the time when same could be delivered.

The first letter in which appellee made any reference to quantity or price of material was the one under date of July 15, in which it says: "At what price will you furnish us a single car of this material so we can determine definitely what it is?" On the following day appellant wrote to appellee, referring to a telephone conversation, and inquiring whether appellee wanted its order entered for a sample car or for 500 tons.

It was in response to this letter that appellee wrote the letter of July 22, which we have previously discussed in this opinion. If from a consideration of the letter standing alone there can be the slightest doubt that appellee intended thereby to order only a single carload of the material, and not to order the 500 tons which appellant had been insisting on selling, such doubt is entirely removed when the letter in question is considered in connection with the previous correspondence, and especially when considered in connection with the two letters immediately preceding it.

The complaint sets out a number of letters which are alleged to have been interchanged between appellant and appellee after July 22, 1903, and also avers that certain steel scrap was shipped by appellant to appellee, and received and paid for under the contract. Appellant insists that it is the duty of the court, in passing on the sufficiency of the complaint, to consider these subsequent letters, and also the subsequent acts and conduct of the parties as averred. If the letter of July 22 was ambiguous,

or capable of more than one meaning, or, if this letter and those which preceded it, when considered together, were uncertain, indefinite or obscure in meaning, then the means of construction contended for might be resorted to; but where there is no obscurity or uncertainty in the words used, and where the meaning is clearly apparent from the language employed, such meaning will control, and the court cannot look outside of the language employed to find a meaning different from that which is explicitly expressed. *Newpoint Lodge, etc.,* v. *School Town of Newpoint* (1894) 138 Ind. 141, 37 N. E. 650; *Morris* v. *Thomas, supra; Diamond Plate Glass Co.* v. *Tennell* (1899), 22 Ind. App. 132, 52 N. E. 168; *Gardner* v. *Caylor* (1900), 24 Ind. App. 521, 56 N. E. 134.

The fourth and fifth assignment of errors attempt to question the sufficiency of the evidence to support the judgment of the court. This case was triable by a jury, and

6. was actually so tried. The provisions of §8, of the act approved March 9, 1903 (Acts 1903 p. 338, §698 Burns 1908) do not apply, therefore, to this case, as that section applies only to cases not triable by a jury. An attempt, therefore, by a direct assignment of error, to

7. question the sufficiency of the evidence to sustain the verdict, in a case of this kind is unavailing. In cases triable by a jury, such a question can be presented to this court only by assigning as one of the causes for a new trial that the verdict or decision is not sustained by sufficient evidence, and then assigning as error the action of the trial court in overruling the motion for a new trial.

The trial court did not err in sustaining the demurrer to the second paragraph of amended complaint, and as this is the only error properly presented and not waived, the judgment is affirmed.

NOTE.—Reported in 96 N. E. 807. See, also, under (1) 3 Cyc. 388; (2) 2 Cyc. 1014; (3) 9 Cyc 247, 267; (4) 35 Cyc. 53; (5) 17 Cyc. 567, 607; (6, 7) 2 Cyc. 999. As to letters and telegrams, considered together, to make out a contract, see 110 Am. St. 754.