ROSE ACRE FARMS, INC. *v.* L. P. CAVETT CO. OF INDIANA, INC.

[No. 1071A201. Filed March 2, 1972. Rehearing denied April 6, 1972.]

*John M. Lewis,* of Seymour, for appellant.

*Thomas R. Haley,* of Seymour, *Hamill, Price & Carroll,* of Indianapolis, for appellee.

LOWDERMILK, J.—This appeal comes to us as the result of a finding and judgment for the plaintiff in an action brought in one Paragraph for money due.

Plaintiff-appellee alleged that each of the parties was a corporation; that in 1967 the plaintiff, at defendant's request, delivered and installed on defendant's property near Acme, Indiana, 3,407 square yards of bituminous asphalt paving at an agreed price of $2.90 per square yard, or a total price of $9,880.30. To this plaintiff asked $131.74 Indiana Sales Tax on the material included in the job; it further alleged the defendant was indebted to plaintiff for such work, labor, materials and tax in the total sum of $10,012.04, all of which was due and unpaid and which the defendant at that time refused to pay.

It further asked 6% interest per annum on the unpaid debt from and after December 19, 1967 until paid.

The defendant-appellant filed its answer in two Paragraphs, the first of which included the admission that defendant was a corporation, but was without information as to the legal status of plaintiff. The rest and remainder of the allegations were denied.

Under the affirmative paragraph of answer the defendant says that it admits that in the year of 1967 the plaintiff did install certain amounts of bituminous asphalt paving, of which the exact quantity was not then presently known; that there was not any agreement, express or otherwise, verbal or written, as to a price for such installation in 1967; that without the knowledge or consent of defendant the plaintiff charged a new and higher price than that previously charged defendant by plaintiff for work in other years which was similar to the work done in 1967; and, that defendant is willing to pay the

proper or reasonable price for such installation, as had previously been bargained and agreed between the parties.

No reply was filed to the second Paragraph of answer.

The trial was by the court without a jury and the court found for the plaintiff and against the defendant in the amount of $10,012.04, together with the costs and further decreed that interest accrue on the judgment only from the date of the judgment.

The trial was had without a reporter taking the same. The record indicates that the court had asked both parties prior to the commencement of the trial if they desired a reporter and each of them waived reporting of the case. A Statement of the Evidence When No Report Was Made of the Evidence was prepared under authority of Supreme Court Rule AP 7.2 (A) (3) (c).

Under said Rule the parties stipulated and agreed that the evidence was that some time in August, 1967, the president of the defendant-appellant corporation asked a representative of the plaintiff-appellee corporation about having some blacktopping done on the defendant-appellant's premises; they had done blacktopping for the defendant-appellant in previous years; after an informal measurement of the area to be blacktopped the plaintiff-appellee sent a proposal, in writing, to the defendant-appellant, which was made a part of the record as an exhibit and which shows on its face that the price per square yard was to be $2.90. This exhibit was admitted into evidence and, of course, is a part of the record. The defendant-appellant received this proposal, as it was found in its files after this dispute arose; in addition, the defendant-appellant admitted it had been received and that he had glanced at it without initially reading it in detail; that the defendant did not at any time reply to such proposal in writing.

The vice president of the plaintiff-appellee corporation recalled that someone on behalf of the defendant (whose iden-

tity he could not then recall) had telephoned and directed that the work be started.

The evidence was, further, that the blacktopping work was performed in two stages in October and November of 1967; that during part of the time the work was being done the president of the defendant-appellant corporation was personally present; that after completion of the work it was remeasured on request of the defendant-appellant, as shown by the plaintiff-appellee's exhibit 2; that at that time the price was first questioned; that subsequent to the remeasuring a further reply in writing which was plaintiff-appellee's exhibit 3 and admitted into evidence was sent to defendant-appellant by the plaintiff-appellee; that there is no dispute as to the actual work done, the quantity or workmanship, *but the only dispute is as to price.*

That the defendant-appellant, through its president, generally corroberated the evidence of the plaintiff-appellant through its witnesses; that the defendant-appellant recalled reading the price but thought it was an "error" as it was considerably higher than quotations in previous years. Defendant-appellant further testified that he had never accepted the proposal in writing, which was plaintiff's exhibit number 1.

After the rendition of the judgment defendant-appellant filed a motion to correct errors, consisting of two specifications, the first having two sub-titles and the second one sub-title, and charged generally that:

The court was asked to alter, amend, modify or correct the judgment of June 1, 1971 for the reason that its decision and judgment was not supported by sufficient evidence in the following particulars, to-wit:

(a) There was insufficient evidence to establish an enforceable contract between the plaintiff and defendant for paving at the rate of $2.90 per square yard;

(b) That if there was not an enforceable contract between the parties for such rate per square yard, the recovery would

have had to have been based on *quantum meruit*, and that there was no evidence as to the reasonable value of such services in this cause to support any judgment.

Specification 2 charges that the court should alter, amend, modify or correct the judgment of June 1, 1971, for the reason that such decision and judgment was contrary to law in the following particulars, to-wit:

(a) That the alleged contract for the price of more than Five hundred dollars ($500.00) was invalid due to the fact that it was not signed by the party, or his authorized agent, against whom enforcement was sought, as required by Section 19-2-201, Burns Ind. Statutes (Vol. 5, Part 2, 1964 Replacement).

The prayer was that the court render substantial justice by setting aside its judgment of June 1, 1971 and by entering in lieu thereof judgment for the defendant, or that the court otherwise alter, amend, modify or correct its judgment so it will conform to the evidence and will not be contrary to the evidence and will not be contrary to law or that the court make such appropriate relief or make relief subject to condition.

The court then having been advised in the premises denied the defendant's motion to correct errors, which ruling was followed by a praecipe for a transcript on appeal and the record of the evidence made under Rule AP 7.2(A)(3)(c), as above set out.

Defendant-appellant vigorously argues the point that the corporation did not at any time reply to the proposal in writing and that the vice president of the plaintiff-appellee corporation recalled that someone on behalf of the defendant-appellant corporation had telephoned and directed that the work be started. He further said in his statement of facts that "the President of defendant was personally present; that after completion it was re-measured on request of the defendant and at that time the question of price was first

raised; that there is no actual dispute as to the work done, the quantity or the workmanship, but the only dispute is as to price, and as to any agreement between the parties as to price."

Further, defendant-appellant generally corroborated the evidence of the plaintiff-appellee; "that the defendant recalled reading the price, but thought it was an 'error' as it was considerably higher than quotations in previous years." *Defendant testified without contradiction that he had never accepted the proposal (plaintiff's exhibit 1) in writing.*

Defendant-appellant further contends that if there was not any contract between the parties then the plaintiff's recovery could only be based on *quantum meriut,* and that the record is completely devoid of any evidence in this regard.

He has a third contention, which is that in Indiana there cannot be any recovery on contracts over $500.00, by statute, unless the alleged contract is signed by the defendant-appellant or by his authorized agent, which admittedly was not done in this instance.

Defendant-appellant submitted an able and convincing brief. However, he first argues there was no agreement to pay the price of $2.90 per square yard since he had never accepted the proposal and in fact testified he thought it was a mistake. (This argument is under specification 1(a) of the motion to correct errors.) There was evidence before the trial court that the defendant-appellant had received in writing the quoted price at which plaintiff-appellee was willing to do the work which defendant-appellant requested. That evidence indicated the defendant-appellant never questioned the plaintiff-appellee as to the price quoted nor did he raise an issue as to it being a mistake and, in fact, was present much of the time over the two month period and watched the asphalt being laid in place.

After this evidence was introduced there was a question of fact for the trial court, whose duty it is to weigh the evidence,

to determine, i.e., did defendant-appellant actually think there was a mistake in the amount of the quoted price to the extent it would prevent a meeting of the minds of the parties? Was the defendant-appellant so negligent in his reading of the proposal for the blacktop job that he did not read the price and merely thought it was a proposal price per yard at the cheaper rate of years gone by? Did this permit him to say there was no meeting of the minds and no determination of the price per square yard? This evidence presents the determination of disputed facts, which determination is the burden of the trial court. This court cannot and will not, where there is conflicting evidence, overrule the trial court, unless the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, then the decision of the trial court will be set aside on the grounds that it is contrary to law. *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 532, 104 N. E. 2d 669.

This court's duty is to accept the evidence most favorable to the appellee. And in so doing this court cannot and will not accept an act of negligence admitted by the defendant-appellant that he did not read the proposal for the work to be done and in so negligent a manner that he did not know the price per yard he was to pay that it would exempt him from payment after he permitted the work to be done pursuant to the proposal (contract) and watched the blacktop being laid on his property at different times over a two months period.

This court has many times said that it cannot and will not weigh the evidence where the evidence is conflicting, as the weighing of the evidence is the prerogative of the trial court and the trial court only. In the case at bar the court had the right and duty to consider the evidence; he saw and observed the witnesses on the stand, took into consideration their truthfulness, their bias and interest in the case, and

he was in a better position to understand the evidence, draw inferences therefrom and determine the truth of the matters at issue. *Pontious* v. *Littleton* (1970), 146 Ind. App. 369, 255 N. E. 2d 684.

"* * * Where the evidence is conflicting, in determining whether a finding in favor of appellee is warranted, only the uncontroverted facts and the evidence most favorable to appellee and the favorable inferences that may be drawn therefrom can be considered on appeal." *Armstrong* v. *Oster* (1919), 189 Ind. 1, 123 N. E. 109.

Defendant-appellant cites cases and texts pertaining to whether or not there was ever an agreement between the parties, which citations hold, in general, as follows:

17 C. J. S. *"Contracts,"* Par. 39, p. 664:

"To accept a contract is to admit it and agree to it; to accede to it; to assent to it; the ordinary meaning embodies assent and agreement."

Defendant-appellant, citing from the case of *Hirsch & Sons etc.* v. *Peru etc. Company* (1911), 50 Ind. App. 59, 67, 96 N. E. 807, states that it is interesting to note that it, too, was a suit on an "agreed price" and although there was considerable correspondence between the parties the court held that there was not an enforceable contract because there was nothing showing a complete acceptance of the terms, including price. Similarly, "only the particular person to whom an offer is made can accept it; . . ." Defendant-appellant contends that the plaintiff's exhibit 1 shows that the offer was made to Rose Acre Farms, Inc., Attention David Rust and that there is not any evidence that David Rust at any time accepted it, either verbally or in writing. He further states, in fairness, that the record does show that the vice-president of plaintiff-appellee corporation did recall initially that somebody on behalf of the defendant-appellant had personally telephoned and directed that the work be started.

He further argues that such could not be construed as legal acceptance of a written offer.

And, finally, "as a general rule, mere silence does not constitute an acceptance of the offer." 17 C. J. S., *"Contracts,"* Par. 41e, p. 670.

Inasmuch as a corporation is an artificial person and acts only through its officers, then an acceptance by an agent of the corporation authorzied to make such an acceptance can bind the corporation as well as could the president or other high official thereof.

As we have stated, the law in the cases heretofore cited, and as the evidence on this point is in dispute, it is the trial court's province to determine whether or not there was an agreed acceptance by the defendant-appellant and it being so found we are not at liberty to weigh the evidence.

Defendant-appellant contends that under specification 1 (b) the contract was not enforceable between the parties for such rate per square yard and that the recovery would have had to have been based upon *quantum meriut* and that there was not any evidence as to the reasonable value of such services in the cause to support any judgment herein on *quantum meriut*. He admits that it is fundamental that where both parties concerned expect services rendered by one for the other to be paid for, there is an implied promise to pay the *reasonable value* of such services, and cites a case thereon. However, he further insists there was not any evidence offered at any time of the "reasonable value" of the services performed by the plaintiff-appellee. He further contends there could have been no recovery based on *quantum meriut* because there was no evidence introduced upon which *quantum meriut* could be legally based.

We agree with defendant-appellant that there was no evidence as to *quantum meriut* and there could be no recovery in this cause on that theory.

The final point of argument is that this case being an alleged contract for sale with a price of more than $500, the alleged contract was invalid due to the fact it was not signed by the party against whom enforcement is sought or by his authorized agent or broker. Ind. Stat. Ann. § 19-2-201 (Burns 1964 Replacement).

The statute which the defendant-appellant relies upon provides:

"(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(2) . . . (3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable (a) if the goods are to be specifically manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or (b) . . . (c) with respect to goods for which payment has been made and accepted or which *have been received and accepted.*" (Our emphasis.)

The contract in the case at bar, as can readily be seen, is not rendered unenforceable by the statute cited by defendant-appellant for the very reason that the statute contains two exceptions under which the statute of frauds need not be complied with and even though it be not complied with there is still an enforceable contract. Namely, if the goods are manufactured specially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, then the statute of frauds will not defeat

the contract. The second exception is that if the goods have already been accepted and received, then the statute of frauds will not defeat the contract.

The contract was not for the sale of merchandise. It was a contract for a construction job with the appellee furnishing the materials for the job and performing the labor.

In the case at bar it is readily seen and admitted by the defendant-appellant that he did accept the goods, that he does not question the workmanship or the quality of the product, but that he only questions the price. This court takes judicial knowledge that there is a very limited, if any, market for used blacktop or asphalt which is already laid in place and therefore by the weight of good common sense, blacktop that has already been packed down and laid in place is goods which is manufactured specially for the buyer and for which this seller or any seller would be hard pressed to find a suitable sale in the ordinary course of his business.

In the case at bar a trial judge tried this case without the intervention of a jury, as agreed by the parties, and after hearing all of the evidence determined that the defendant-appellant had, in fact, made a contract with the plaintiff-appellee which was not within the statute of frauds, the same being within the exception in that the blacktop job was accepted when completed by the defendant-appellant, in spite of the fact that defendant-appellant testified he felt the $2.90 per square yard was an error on the part of the plaintiff-appellee and this court cannot as a matter of law say that the trial court abused his discretion in weighing the evidence and in the judgment he made as a result of the law when applied to the evidence. *Pokraka* v. *Lummus Co., supra; Pontious* v. *Littleton, supra.*

Finding no error in this proceeding the judgment of the trial court is hereby in all things affirmed.

Hoffman, C.J., Lybrook, J., concur.

NOTE.—Reported in 279 N. E. 2d 280.