## Angell v. Tubies

*John D. Kuhn*, for plaintiff.
*Walton V. Davis*, for defendants.

SPICER, *P.J.*, April 20, 1983—Plaintiff, an individual, began this action in assumpsit by filing a complaint on October 20, 1982. Defendants, who

are husband and wife, filed preliminary objections which were resolved by the filing of an amended complaint. Defendants again filed preliminary objections which are presently before the court for decision.

For reasons later discussed, the court dismisses the objections which are in the form of a motion to strike, a motion for more specific pleading, and a demurrer. Defendants are given 20 days in which to file an answer.

The complaint describes plaintiff as being in the business of concrete and general construction. Defendants are said to have requested him to perform concrete construction work consisting of laying two concrete floors, pouring a concrete slab, and erecting a retaining wall. Plaintiff was to be compensated on a time and material basis.

Plaintiff's claim is essentially set forth in Paragraph 9 wherein the following labor and material charges are set forth:

| | |
|---|---|
| Concrete | $ 7,806.39 |
| Wire mesh | 186.00 |
| Steel rods | 450.94 |
| Back hoe (25 hrs. at $13 per hour) | 325.00 |
| Labor (49½ hrs. at $11.25 per hour) | 556.88 |
| Labor (489 hrs. at $7.50 per hour) | 3,667.50 |
| 15% profit on labor | 633.64 |
| Total | $13,626.35 |
| Credit, October 21, 1981 | 10,000.00 |
| Balance | $ 3,625.35 |

Despite allegations that defendants orally requested the work and that the terms of the agreement were not reduced to writing, defendants argue

that Pa.R.C.P. 1019(h) has been violated. That rule requires a pleader to state specifically whether the cause of action or defense is based upon a writing. Thus, defendants contend they are entitled to have the complaint stricken and to have a more specific allegation concerning the contract.

The rule has never been interpreted in a hypertechnical sense. If the complaint fails to allege that a contract is in writing, it is assumed that it is oral. Goodrich-Amram 2d §1019(h):1. There is, therefore, no basis for either the motion to strike or for a more specific complaint.

Defendants base their demurrer upon the Statute of Frauds contained in the Uniform Commercial Code, 13 Pa.C.S. §1206 which provides:

(a) General rule.—Except in the cases described in subsection (b), a contract for the sale of personal property is not enforceable by way of action or defense beyond $5,000 in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is signed by the party against whom enforcement is sought or by his authorized agent.

(b) Exceptions.—Subsection (a) does not apply to contracts for the sale of goods (section 2201) nor of securities (section 8319) nor to security agreements (section 9203).

Defendants argue this statute is nonwaivable and thus properly raised in preliminary objections. Plaintiff does not argue the point. The court is inclined to say that the statute may be waived since it speaks of enforceability and does not preclude the bringing of an action. However, we ignore this inclination since there is no need to determine the issue.

The demurrer did not specify which Uniform Commercial Code section formed the basis for the objection. Defendants have argued that the contract is subject to section 1206. Again, we are inclined to disagree. The comments to section 1206 make it clear that it was enacted to fill gaps left by other Statute of Frauds provisions in the code. It would seem that this case is more properly argued under the Statute of Frauds contained in the sales chapter. 13 Pa.C.S. §2201. The material described in the complaint would appear to readily fall within the definition of goods set forth in section 2105.*

The court considers it unimportant for purposes of this case which Statute of Frauds section is used, however. The wording is almost identical and the same policy considerations govern both.

Probably because of the rarity of circumstances involving "personal property," there is a paucity of authority for section 1206. Although no Pennsylvania case has decided the exact issue presented in this case, there is good indication that the contract described in the complaint is not subject to code treatment.

The general subject of a contract covering both goods and services is treated by one commentator as follows:

"In consequence of the fact that the law does not have a recognized category of "hybrid contracts,"

---

* (a) "Goods".—"Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Division 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in section 2107 (relating to goods to be severed from realty; recording). 13 Pa.C.S. §2105.

[i.e., a goods and services contract] the courts deem it necessary to classify a hybrid contract as either a contract for the sale of goods or a contract for the rendition of services. In determining into which category a given contract is placed, the courts seek to determine the most significant element of the transaction. Thus the hybrid transaction is classified as a contract for goods or services depending upon whether the goods or services is the essential, dominant, or predominant element of the transaction.

When selling or supplying of goods is merely "incidental" to a contract to render service the contract is a service contract and not a contract for the sale of goods . . .

. . .

When labor and material are to be furnished, the contract is not a contract for the sale of goods if the services element predominates and the transfer of title to personal property is merely incidental." (footnotes omitted) (brackets added) 1 Anderson's Uniform Commercial Code (3rd ed.) §2-105:38 at 580-582. See also, 5 A.L.R. 4th 501, "Applicability of UCC Article 2 to mixed contracts for sale of goods and services" §§2-3; DeMatteo v. White, 233 Pa. Super. 339, 336 A.2d 355 (1975).

Pursuing that then to a situation akin to this case, it is said:

"Where the dominant element of a cement subcontract is not to supply cement but to perform the cement work, the transaction is to be classified as a service contract and the Code is not applicable." Anderson, supra, §2-105:39 at 583, citing Freeman v. Shannon Construction, Inc., 560 S.W.2d 732 (Tex. Civ. App. 1977), on motion for rehearing, 560 S.W.2d 738, (Tex. Civ. App. 1978).

A review of authorities dealing with the issue of code applicability leads to the following conclusions: (1) if the contract provides that one party delivers concrete to a site and the other party uses, pours, and finishes it, there is a contract for the sale of goods. S. M. Wilson & Co. v. Reeves Red-E-Mix Concrete, Inc., 39 Ill. App. 3d 353, 350 N.E.2d 321 (1976). This is true even though the supplier of concrete also provides some labor. Port City Construction Co., Inc. v. Henderson, 48 Ala. App. 639, 266 So.2d 896 (1972). (2) Where the supplier provides all services and those services are significant, it is a service contract. Rose Acre Farms, Inc. v. L. P. Cavett Co. of Indiana, 151 Ind. App. 268, 279 N.E.2d 280 (1972) (asphalt paving). (3) The fact that over one half of the contract price is allocable to the material costs does not alter the conclusion that a contract is basically for services. Northwestern Equipment, Inc. v. Cudmore, 312 N.W.2d 347 (N.D. 1981).

The contract clearly describes a construction contract. The code does not apply.

### ORDER OF COURT

And now, this April 20, 1983, defendants' preliminary objections are overruled. They shall have 20 days in which to file an answer.